## Cooper et al. v. Howell.

## Howell v. Davidson et al.

May 30, 1947.

S. M. Ward, Judge.

Craft & Stanfill, G. C. Wilson and D. G. Boleyn for appellants.

G .C. Wilson, D. G. Boleyn, W. E. Faulkner and Leo T. Wolford for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming in part, reversing in part.

These actions were instituted by Marie Davidson

Howell, one against C. V. Cooper, guardian of Marie Davidson Howell, and his surety, the U. S. Fidelity and Guaranty Company, and the other against S. H. Davidson, and his surety, Fidelity and Deposit Company of Maryland. The causes were consolidated and tried together.

In the action against Cooper and his surety, the court found for the plaintiff in the sum of $834.78, with interest thereon at the rate of 6% per annum from the 3rd day of June 1935, until paid, and in the action against Davidson and his surety, found for her in the sum of $641.93, and the further sum of $600 less a credit of $367.03. Cooper and the U. S. Fidelity and Guaranty Company appeal from the judgment as affects them, and Marie Davidson Howell files a cross appeal in that portion of the action. Marie Davidson Howell appeals from the second case, or that portion of the judgment as affects S. H. Davidson and Fidelity and Deposit Company of Maryland, and in that portion of the action the Fidelity and Deposit Company of Maryland files a cross appeal against Marie Davidson Howell. We, therefore, have two direct appeals and two cross appeals with considerable involvement and complexity. For clarity it will be best to consider the matters involved here commencing at the outset and following them in sequence, discussing the contentions as they appear.

On September 9, 1929, the appellant, C. V. Cooper, duly qualified as statutory guardian of the appellee, Marie Davidson Howell. The coappellant, U. S. Fidelity and Guaranty Company, became surety on his bond. There came into his hands as such guardian the sum of $5,232.19. He served in the capacity as guardian until May 4, 1935, when he made a final settlement in the Perry County Court, which settlement was approved as of June 3, 1935. Whereupon, the appellant, as principal, and the U. S. Fidelity and Guaranty Company, as surety, were discharged from liability by reason of such guardianship. S. H. Davidson, the grandfather of the appellee, was appointed and qualified as her statutory guardian on June 3, 1935, at which time appellant, Cooper, paid over to his successor the assets of the estate in his hands. The settlement showed cash in hand $1,451.24; one note of John M. Davidson, bearing date August 12,

1932, $250; one note of John M. Davidson, bearing date September 2, 1932, $30; one note of S. H. Davidson, secured by a mortgage, bearing date December 11, 1930, $600; and two 5½% Hazard Board of Education bonds, face value $1000 each, but valued in the settlement at $1,826.93. The settlement showed $895.26 expenditures and $178.76 guardian's commission, all making a total of $5,232.19.

The second action brought by Marie Davidson Howell was against her grandfather as guardian, which deals with the ward's estate during the time S. H. Davidson acted as guardian.

The matter was heard before a commissioner, who filed his report with the court. Exceptions were taken to that report and the court entered judgment as above stated. It is impossible to tell from this record the reasoning the court used in adopting a judgment different from that of the commissioner. There is contention upon the part of the appellant, Cooper, that the court erroneously included the notes of $250 and $30 respectively of John M. Davidson, when in fact he intended to exclude those notes from a charge against Cooper, and in his brief he tries to show a possible method of arriving at the figure reached by the court, but based upon this record there is more or less speculation in trying to arrive at the same conclusion.

Marie Davidson Howell bases her cross appeal upon the fact that the court did not charge Cooper with the two notes mentioned when it should have, and further she insists the court erred in not charging the $600 note also to C. V. Cooper. We will, therefore, dispose of the matter involving the three notes at this point.

It could hardly be said that Cooper, as guardian for this infant, exercised the care, diligence and precaution that he should have exercised in investing the ward's estate. It is contended on the one hand that John M. Davidson was insolvent when the money was loaned to him—on the other, that he was not. The money was loaned in 1932 and up until the time the settlement was made there had been no interest paid on these notes. As to the $600 loaned to S. H. Davidson, Cooper first says he thought he was getting a mortgage on a larger body

of land than the mortgage really covered; that a bank had loaned $1000 to Davidson on this home property and that he was getting this $600 to satisfy the balance of that loan; that he thought he was getting the identical property mortgaged to the bank, and that he didn't know why he didn't. Anyway, he allowed more than 4 years to pass without doing anything about it, and apparently, made no move to collect this note. We think that the matter raised on the cross appeal with respect to these notes was well taken and that they should have been charged to C. V. Cooper, less, of course, the amount realized upon the sale of the mortgaged property in satisfaction of the $600 note.

This leads us then to the matter of the expenditures in behalf of the ward. According to the settlement filed, appellant, Cooper, shows an expenditure of $895.26, having been paid out from December 28, 1928, up until February 28, 1935, during most of which time it appears the ward was in the Home for Children, of the Jr. O. U. A. M. at Tiffin, Ohio, where all of her expenses were provided. It is utterly impossible from the judgment entered to ascertain just how much of this $895.26 was allowed, and how much was charged. It appears from the briefs on that subject that there was possibly $440 of the $895.26 that was contested. The record shows that for approximately one year Marie Davidson Howell lived in the home of her grandfather, S. H. Davidson, during which time the settlement shows numerous items paid to S. H. Davidson for clothes and board for Marie. Marie testifies that she did not receive all the items as listed during that time, but admits that she did stay with her grandparents for a period of time. Prior to that time payments were made to the mother who had the care and custody of the child, and there is no contradiction herein that such money was not paid to the mother of Marie Davidson Howell. And there are numerous other items after Marie went to the home at Tiffin, Ohio. Payments were made for music lessons, and to S. H. Davidson for clothes sent to the home, and for payment of bond, much of which Marie Davidson Howell testified she did not receive, but all of which, according to the settlement filed, may have properly been allowed or paid for her benefit. The difficulty arises from the fact that so much of it was paid through S. H. Davidson. While

it is true he was the grandfather, no doubt C. V. Cooper thought that he would be the proper person to whom to pay the money, as certainly a grandfather should see that the child got every penny of the money so paid. But under this evidence, we are not inclined to say that that settlement was wrong, but we are rather led to believe that he should have been allowed the expenditures as shown.

This leads us then to the matter of the commission. It cannot be said that as guardian, C. V. Cooper was as diligent as he should have been. Had he been most careful he would not have made loans to insolvent relatives of his ward. He would have taken care to see that the mortgage securing the $600 note was proper. He would have raised some question as to the payment of these notes during all of this time, and at least raised some question about the payment of all of this money to S. H. Davidson for the benefit of the granddaughter, especially after she was placed in the home at Tiffin, Ohio. Therefore, we think the court properly disallowed the commission of $178.76.

It is difficult to ascertain just what counsel for Marie Davidson Howell in his brief is contending in the matter relative to the judgment as found against J. H. Davidson. There appears to be no dispute as to the amount of money that came into Davidson's hands and it also appears that the commissioner gave credit for $142.03, and recommended that judgment go for the difference. The commissioner also found that Davidson and his surety were not liable for the three bad notes, which is in line with our conclusion above. The court below reversed the commissioner in this matter and excused Cooper from the $600 note and put that loss on Davidson, and then reduced the amount of the ward's recovery to $641.93. Just how he reached this figure we cannot understand from this record. Davidson, according to his settlement, paid $872.03 to Marie Davidson Howell. However, he filed no vouchers or anything to show that that amount had been paid. With this conflicting testimony, there is nothing upon which we can put our finger to arrive at any other conclusion. Therefore, we will follow the chancellor in this item.

The Fidelity and Deposit Company of Maryland

brings a cross appeal against Marie Davidson Howell, denying any liability of the surety on the bond of the second guardian, S. H. Davidson. The Fidelity and Deposit Company of Maryland takes the position that the three so called bad notes, in the sum of $880, were made at a time when the Davidsons were insolvent, and that it was not liable for a debt owing by the guardian to the estate at the time of his appointment and qualification. That a surety is not responsible for the individual debts of an executor or guardian, or administrator who is insolvent at the time of his appointment, is clearly established by the following cases: Costigan v. Kraus, 158 Ky. 818, 820; 166 S. W. 755, Ann. Cas. 1915D, 115; Buckel v. Smith's Adm'r, 26 Ky. Law Rep. 991, 82 S. W. 1001; Williams' Adm'r v. Vonderhaar's Ex'x et al., 262 Ky. 68, 89 S. W. 2d 321; and Cawood v. Cawood's Adm'x, 285 Ky. 201, 147 S. W. 2d 88. Under the above authority there was no justification for holding the Fidelity and Deposit Company of Maryland as surety for the liabilities of S. H. Davidson on a note signed by him prior to his qualification as guardian.

For clarity of our findings, we have concluded that C. V. Cooper should have been charged with the three bad notes, subject to the credit of $367.03, or a total of $512.97, with interest. He should not be allowed the $178.76 for commission, which would make a total charge of $691.73 as against him, and inasmuch as this finding conflicts with the findings of the court, it is reversed on the direct appeal, and also reversed on the cross appeal. In the appeal of Marie Davidson Howell against S. H. Davidson and Fidelity and Deposit Company of Maryland, the judgment is affirmed on the direct appeal insofar as it affects S. H. Davidson, and is reversed on the cross appeal as affecting the Fidelity and Deposit Company of Maryland to the extent of its liability on the $600 note, which was subject to a credit of $367.03, and affirmed as to the remaining liability.